Filed 8/31/21  P. v. Hernandez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHRISTIAN ROBERT HERNANDEZ,<br><br>    Defendant and Appellant. | G059283<br><br>(Super. Ct. No. 17WF1927)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Lance Jensen, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

Christian Robert Hernandez appeals from the judgment after a jury convicted him of first degree burglary and robbery and found he personally used a firearm in the commission of the robbery.

The jury was instructed with CALCRIM No. 315, which listed 13 factors for it to consider when evaluating the accuracy of the witness's testimony identifying Hernandez as the perpetrator. One factor was how certain the witness was when he made the identification (the witness certainty factor or certainty of identification factor). Hernandez contends the trial court's failure to excise this factor from CALCRIM No. 315 violated his state and federal rights to due process. While this appeal was pending, our Supreme Court rejected a due process challenge to the witness certainty factor in CALCRIM No. 315. (*People v. Lemcke* (2021) 11 Cal.5th 644 (*Lemcke*).) We obtained supplemental briefing from the parties addressing *Lemcke*'s impact on Hernandez's claim. In his supplemental brief, Hernandez maintains inclusion of the witness certainty factor in the instruction violated his right to due process and he asserts that even if it "did not rise to the level of a due process violation" it was nonetheless prejudicial error. We disagree and affirm the judgment.

FACTS

A. *The Burglary and Robbery*

Around noon on August 31, 2017, Ryan E. (Ryan) was in his garage, where he had two couches and a chair. He was standing with his back to the garage door, which was open about two feet from the floor, when a man, later identified as Hernandez, suddenly pushed the door up another foot and ducked underneath it. Hernandez shoved Ryan forward. Ryan landed with his back against the chair in the rear of his garage. Hernandez was wearing a blue painter's mask covering his face from the bridge of his nose to under his bottom lip.

Pointing a black handgun with a silver tip at Ryan, Hernandez first demanded "the weed" and then "the money." Ryan pointed to $40 on the couch and told

2

Hernandez to take it. Hernandez grabbed the cash and a jar of marijuana that was on the counter. Hernandez looked around the garage, opened a cabinet under the counter, and pulled out a small safe Ryan had inside, which contained his high school class ring and other personal mementos. Before leaving, Hernandez put the gun to Ryan's head and threatened to kill him. Holding the gun in one hand and the jar of marijuana in the other, Hernandez kicked the safe out the partially open garage door and left. Ryan heard a car door close and a car speed away. He walked out of his garage and saw a silver car driving away, down the alley.

Ryan called the police. Officer Eric Tittle was the first to arrive. Ryan recounted what happened and described his assailant as a Hispanic male, about 20 years old, with a heavy build, weighing about 225 pounds, and approximately five feet nine or 10 inches in height. Ryan told the police he suspected his friend C.L., a minor, was involved but that C.L. was not the man who robbed him.

B. *Investigation and Identification*

Officer Jacob Sansenbach canvassed the area for video surveillance footage and located a nearby camera that recorded a vehicle leaving the alleyway after the robbery. Although he was unable to see the car's driver in the video, he was able to capture the car's license plate. A records check revealed the car was registered to either Anthony Mesta or Hilda G. in Los Angeles.

The day after the robbery, one of Ryan's friends contacted him and told him to look up "Bhristian" on Instragram and watch his "story." When he did, Ryan saw photographs of C.L. and another man with his stolen property and the gun used in the robbery. Ryan immediately recognized the man in the Instragram photographs and video as the man who robbed him. Some of the photographs had captions. One photograph had the caption "took a N* safe," and another was captioned "just jugged a f* boy," which Ryan understood to mean just robbed someone. One photograph of the man wearing Ryan's class ring was captioned, "Con mi champ." Ryan noted the photographs

3

had been posted the day of the robbery. He recorded the video, took screenshots of the photographs, and then sent Sansenbach an e-mail containing the video of Bhristian's Instagram story. Ryan checked C.L.'s Twitter feed and saw that the day before the robbery, C.L. had been communicating with a person using the handle "B Christian" about setting up a robbery for the day Ryan was robbed.[1] Using his cell phone, Ryan captured this Twitter thread with a screenshot.

After getting Ryan's e-mail, Sansenbach brought Ryan to the police station, where an analyst extracted the videos and screenshots from Ryan's phone. Sansenbach determined the Bhristian social media accounts belonged to Hernandez. He obtained Hernandez's driver's license photograph and compared it to the video, confirming Hernandez was the person in the video.

Two days after the robbery, Sansenbach showed Ryan a sixpack photographic lineup containing Hernandez's photograph. After viewing the photographic lineup for about 10 seconds, Ryan identified Hernandez as the person that robbed him, mentioning the protrusion of his checks and the upper portion of Hernandez's face and eyes were similar to the robber's. About five days after the robbery, Sansenbach executed a search warrant at Hernandez's home but did not find a gun or Ryan's property.

C. *Trial Proceedings*

Hernandez was charged with first degree residential burglary (Pen. Code, §§ 459, 460, subd. (a); count 1)[2] and first degree robbery (§§ 211, 212.5, subd. (a); count 2). As to the burglary, it was alleged that a nonaccomplice was present in the residence during the commission of the offense (§ 667.5, subd. (c)(21)), and as to the

[1]     A Twitter handle is the username unique to your account and appears in your profile URL.

[2]     All further statutory references are to the Penal Code.

robbery, it was alleged Hernandez personally used a firearm in the commission of the offense (§ 12022.53, subd. (b)).

Hernandez's first trial ended in a mistrial after the jury was unable to reach a verdict. The prosecution filed an amended information prior to the second jury trial, adding an allegation that Hernandez was ineligible for probation due to use of a firearm (§ 1203.06, subd. (a)(1)).

1. *The Prosecution's Case*

At the second trial, Ryan described the incident in the garage and his discovery of the photographs and video posted on Hernandez's Instragram account and the Twitter thread between C.L. and Hernandez. In court, Ryan identified Hernandez as the individual who robbed him and the person he saw with his stolen property in the Instagram video.

Ryan described his ability to see Hernandez's face during the robbery, explaining Hernandez was about two feet away from him during the robbery and the lighting was adequate enough to see Hernandez's face. At the time of trial, two and a half years after the incident, Ryan was wearing glasses and stated his vision had declined in the past year. He was not wearing glasses at the time of the robbery but was able to clearly see Hernandez standing two feet away from him in the garage. While he was not able to see all of Hernandez's face because Hernandez was wearing a mask, Ryan could see his eyes and cheekbones. But Ryan admitted that during the robbery, his main focus was the gun and not the Hernandez's face.

When Ryan identified Hernandez in the photographic lineup, his identification was based on Hernandez's facial structure and other parts of his face that were not covered by the mask during the robbery. Ryan was confident that if he had been shown the sixpack photographic lineup immediately after the robbery, he would have identified Hernandez because he recognized the eyes and facial structure. While viewing

5

the social media images was a factor in helping Ryan identify Hernandez, it was not the only factor.

Both the prosecution and the defense showed Ryan a photograph of Hernandez standing next to his cousin Anthony Mesta and asked if the two men looked similar.[3] Ryan indicated Hernandez and Mesta looked "somewhat similar" as they were both Hispanic males about the same height with larger builds and similar style facial hair. However, their facial features and body types were different. On cross-examination, Ryan rejected defense counsel's suggestion Hernandez and his cousin could pass as twins. Looking at the photograph, Ryan indicated he was certain Hernandez was the one who robbed him. But he admitted that if he had been shown the photograph immediately after the robbery, he would have said it could have been either of the two men. After being asked to look at the photograph and consider only his observations of the robber in his garage and not the social media images, Ryan had no doubt Hernandez was the one who robbed him. Ryan explained Hernandez and Mesta have different body types and Hernandez's matches the robber's.

Throughout the prosecutor's questioning of Ryan, the prosecutor repeatedly inquired if he was "certain" about his identification of Hernandez: asking if he was "certain" the person who committed the robbery was the person in the Instragram story; whether he was "certain" when he identified Hernandez's photograph in the sixpack lineup; and if he was "certain" Hernandez was the person that robbed him after looking at the Instragram story, the sixpack photographic lineup, and the photograph of Hernandez and his cousin. Each time, Ryan answered, "Yes." Ryan indicated he had no question about his identification. When asked to explain why he was "certain," Ryan responded his identification was based on Hernandez's facial structure and body type and seeing Hernandez in the Instragram video with his property. The prosecutor's final question to

---

[3]    We ordered the photograph transmitted from the superior court for our review.

Ryan was whether he was "certain" Hernandez was the man who robbed him, and Ryan responded, "Yes."

2. *The Defense's Case*

Mesta and Hernandez were cousins but were frequently asked if they were brothers because they looked very similar and were only six months apart in age. At the time of the robbery, they were both 19 years old.

The car involved in the robbery was registered to Hernandez's aunt, Hilda G., but Mesta, her son, drove the car. Mesta was driving the car on the day of the robbery and told his mother he was going to the beach city where the robbery occurred. Mesta passed away about 13 months after the robbery.

Hernandez testified he was at a friend's house in Los Angeles County when Mesta and C.L. committed the robbery. After the robbery, Mesta and C.L. came to the house where Hernandez was hanging out with a friend; Mesta was driving the car involved in the robbery. Mesta told Hernandez they had just finished "hitting a lick," which Hernandez understood to mean they had committed a robbery. When they showed him the items taken in the robbery, Hernandez got excited and started taking pictures of himself and C.L. with the items. He did not take a picture of Mesta because Mesta asked him not to. Hernandez posted the photographs and video on his Bhristian Instragram account because he wanted to look cool. When posting the photographs, he typed in the captions, including the caption "I really ride wit da glock" on the picture of him holding the gun used in the robbery. One of the photographs in his Instagram story shows him driving the car with his hand on the steering wheel. Hernandez admitted Mesta would let him drive his car. Hernandez did not tell the police Mesta committed the robbery because he feared retaliation from his cousin and his cousin's friends.

Hernandez was the only person who used his Bhristian accounts on Instragram and Twitter. In his communication with C.L. on Twitter, Hernandez did not

7

mean anything about a robbery; he was just trying to look cool. When C.L. said he had it set up for the next day, Hernandez did not know what C.L. meant.

3. *Jury Instruction on Witness Identification Testimony*

Without objection or request for modification, the trial court instructed with jury with CALCRIM No. 315, as follows: "You have heard eyewitness testimony identifying the defendant. As with any other witness, you must decide whether an eyewitness gave truthful and accurate testimony. [¶] In evaluating identification testimony, consider the following questions: [¶] Did the witness know or have contact with the defendant before the event? [¶] How well could the witness see the perpetrator? [¶] What were the circumstances affecting the witness's ability to observe, such as lighting, weather conditions, obstructions, distance, and duration of observation? [¶] How closely was the witness paying attention? [¶] Was the witness under stress when he or she made the observation? [¶] Did the witness give a description and how does that description compare to the defendant? [¶] How much time passed between the event and the time when the witness identified the defendant? [¶] Did the witness ever fail to identify the defendant? [¶] Did the witness ever change his or her mind about the identification? [¶] *How certain was the witness when he or she made an identification?* [¶] Are the witness and the defendant of different races? [¶] Was the witness able to identify the defendant in a photographic or physical lineup? [¶] Were there any other circumstances affecting the witness's ability to make an accurate identification? [¶] The People have the burden of proving beyond a reasonable doubt that it was the defendant who committed the crime. If the People have not met this burden, you must find the defendant not guilty." (Italics added.)

4. *Verdict and Sentencing*

The jury found Hernandez guilty of first degree burglary and found true the allegation that a non-accomplice was present in the residence during the burglary. The

8

jury also found Hernandez guilty of first degree robbery and that he personally used a firearm in the commission of the offense.

Hernandez received a 13-year prison sentence comprised of 3 years for the robbery conviction plus 10 years for the firearm enhancement. The court imposed a concurrent four-year sentence for the burglary conviction.

## DISCUSSION

Hernandez contends the court prejudicially erred by failing to omit the witness certainty factor from CALCRIM No. 315. He acknowledges his counsel did not request the court excise the witness certainty factor from the instruction, but he contends, nevertheless, the court should have sua sponte omitted this factor from the jury instruction because "modern social science research demonstrates there is no correlation between a witness's certainty of identification and its reliability." The Attorney General responds: (1) Hernandez forfeited his argument by failing to object below; (2) the inclusion of the witness certainty factor did not constitute error or a due process violation; (3) and any error was harmless. We agree with the Attorney General.

A. *Applicable Law*

Our analysis of whether Hernandez forfeited his claim is guided by the Supreme Court's decision in *People v. Sánchez* (2016) 63 Cal.4th 411, 461 (*Sánchez*), and our analysis of whether inclusion of the witness certainty factor in CALCRIM No. 315 violated Hernandez's due process rights is guided by *Lemcke, supra*, 11 Cal.5th 644.

In *Sánchez*, the trial court instructed the jury on eyewitness identification evidence with CALJIC No. 2.92, the precursor to CALCRIM No. 315. (*Sánchez supra*, 63 Cal.4th at p. 461.) The instruction informed the jurors they should consider any factor bearing on the accuracy of the identification and listed "'the extent to which the witness is either certain or uncertain of the identification'" as one of the factors to consider. (*Ibid*.) In the trial court, defendant did not request CALJIC No. 2.92 be modified, but on appeal, he argued the court erred by instructing the jury it could consider the certainty of

9

identification factor. (*Sánchez, supra*, 63 Cal.4th at p. 461.) The Supreme Court concluded defendant forfeited his claim, stating: "If defendant had wanted the court to modify the instruction, he should have requested it. The trial court has no sua sponte duty to do so. [Citations.]" (*Ibid.*)

The *Sánchez* court also concluded the trial court did not err by instructing the jury on the witness certainty factor as the case involved both certain and uncertain identifications. (*Sánchez, supra*, 63 Cal.4th at p. 462.) The court noted it had previously "approved CALJIC No. 2.92, including its certainty factor" and had "since reiterated the propriety of including this factor. [Citation.]" (*Ibid.*) The court acknowledged some out-of-state courts had disapproved instructions on the certainty factor because of scientific studies that found a weak correlation between witness certainty and accuracy, but the court indicated any reexamination of its previous decisions approving the witness certainty factor "should await a case involving only certain identifications." (*Ibid.*) The Supreme Court further found any error in instructing the jury on the witness certainty factor was harmless under the standards for state law error (*People v. Watson* (1956) 46 Cal.2d 818, 836) and federal constitutional violations (*Chapman v. California* (1967) 386 U.S. 18, 24) because "[t]he instruction cited the certainty factor in a neutral manner" and the eyewitness identifications were not the only evidence implicating the defendant. (*Sánchez, supra*, 63 Cal.4th at p. 462.)

In a concurring opinion, Justice Liu agreed any instructional error was forfeited and harmless but disagreed with the majority's approval of the witness certainty factor in the instruction. (*Sánchez, supra*, 63 Cal.4th at p. 495 (conc. opn of Liu, J.).) Arguing the propriety of the certainty factor in the jury instruction should be reconsidered, he stated: "In light of developments in scientific research and recent case law, there is a substantial question whether it is proper for trial courts to instruct that witness certainty is a factor bearing on the accuracy of an identification that juries should consider." (*Id.* at p. 498 (conc. opn. of Liu, J.).)

10

In *Lemcke, supra*, 11 Cal.5th 644, the Supreme Court addressed the propriety of instructing on the witness certainty factor in CALCRIM No. 315 as the case involved only a witness's certain identification. Defendant in *Lemcke* requested the trial court modify CALCRIM No. 315 to omit the witness certainty factor, based on Justice Liu's concurring opinion in *Sánchez, supra*, 63 Cal.4th 411. (*Lemcke, supra*, 11 Cal.5th at p. 652.) The trial court denied the request (*ibid.*) and included it as one of 15 factors in CALCRIM No. 315 for the jury to consider when evaluating the eyewitness identification testimony. (*Lemcke, supra*, 11 Cal.5th at p. 646.) On appeal, defendant argued instructing the jury on the witness certainty factor in CALCRIM No. 315 violated his constitutional rights to due process. (*Lemcke, supra*, 11 Cal.5th at p. 646.)

The Supreme Court rejected this argument, concluding "when considered "'in the context of the instructions as a whole and the trial record"'' [citation], . . . listing the witness's level of certainty as one of 15 factors the jury should consider when evaluating an eyewitness identification did not render [defendant's] trial fundamentally unfair or otherwise amount to a due process violation." (*Lemcke, supra*, 11 Cal.5th at p. 661.) Explaining its reasoning, the court indicated CALCRIM No. 315's instruction on witness certainty, "does not direct the jury that 'certainty equals accuracy'" and does not require the jury to "presume an identification [was] accurate if the eyewitness ha[d] expressed certainty. [Citation.]" (*Lemcke, supra*, 11 Cal.5th at p. 657.) The instruction, instead, simply lists the witness's level of certainty as one of the many factors the jury should consider when evaluating the accuracy and credibility of the eyewitness's identification. (*Ibid.*) Recognizing the instruction's language "might cause some jurors to infer that certainty is generally correlative of accuracy" (*id.* at p. 657), the court noted defendant "was permitted to present expert witness testimony to combat that inference" (*id.* at p. 658). The court concluded the due process claim was further undercut by additional instructions the jury received directing it to consider the expert witness's testimony, advising the jury the prosecution had the burden to prove defendant's identity

11

beyond a reasonable doubt, and warning the jury that witnesses sometimes honestly make mistakes. (*Id.* at pp. 647, 658.) Defendant also argued the instruction on the witness certainty factor denied him an opportunity to present a complete defense, but the *Lemcke* court rejected this claim because the record showed he "was permitted to put on a vigorous defense on the issue of identity." (*Id.* at p. 660.)

Even though the *Lemcke* court found no due process violation, it concluded reevaluation of the witness certainty factor in CALCRIM No. 315 was warranted and "refer[red] the matter to the Judicial Council of California and its Advisory Committee on Criminal Jury Instructions to evaluate whether or how the instruction might be modified to avoid juror confusion regarding the correlation between certainty and accuracy. [Citation.]" (*Lemcke, supra*, 11 Cal.5th at p. 647.) Acting pursuant to its supervisory powers, the Supreme Court directed trial courts to omit the witness certainty factor from CALCRIM No. 315 until the Judicial Council completed its evaluation. (*Lemcke, supra*, 11 Cal.5th at pp. 647-648.)

B. *Forfeiture*

The Attorney General argues Hernandez forfeited his claim because he did not object in the trial court to the inclusion of the witness certainty factor in CALCRIM No. 315. Hernandez contends his failure to object should be excused because an objection would have been futile given the case law on the certainty of identification factor at the time of his trial. The Attorney General has the better argument.

We are bound by the Supreme Court's holding in *Sánchez, supra*, 63 Cal.4th at page 461 (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455) and therefore conclude Hernandez's failure to request the trial court omit the witness certainty factor from CALCRIM No. 315 forfeited his appellate claim. (See *People v. Rodriguez* (2019) 40 Cal.App.5th 194, 199 [concluding defendant's failure to object at trial forfeited his appellate claim that CALCRIM No. 315 violated his right to due process by telling the jury to consider eyewitness certainty].) As the Supreme Court

12

explained in *Sánchez,* if Hernandez "wanted the court to modify the instruction, he should have requested it." (*Sánchez, supra*, 63 Cal.4th at p. 461.)

We need only briefly comment on Hernandez's contention that his failure to object should be excused because any objection would have been futile. While the failure to object may be excused where the governing law at the time affords scarce grounds for objection (*People v. Rangel* (2016) 62 Cal.4th 1192, 1215), we note there was case law available to Hernandez to support an objection, like that made by defendant in *Lemcke*. (See *Sánchez, supra*, 63 Cal.4th at pp. 495-498 (conc. opn. of Liu, J.) and cases cited therein.) Moreover, by the start of Hernandez's second trial, *Lemcke* and the issue of whether instructing the jury on the witness certainty factor in CALCRIM No. 315 violated a defendant's right to due process had been pending in our Supreme Court for about a year and a half, thus adding more support to an objection. Under these circumstances, we conclude Hernandez forfeited his claim of instructional error by failing to request the court omit the witness certainty factor from CALCRIM No. 315.

C. *The Instruction Did Not Violate Hernandez's Due Process Rights*

Even assuming Hernandez's claim is preserved, we reject it nonetheless based on *Lemcke, supra*, 11 Cal.5th 644. (*Auto Equity Sales, Inc. v. Superior Court, supra*, 57 Cal.2d at p. 455.) As the Supreme Court explained in *Lemcke*, the certainty of identification factor in CALCRIM No. 315 does not equate certainty with accuracy and does not require the jury to presume an identification was accurate just because a witness expressed certainty. (See *Lemcke, supra*, 11 Cal.5th at p. 657.) Here, the witness certainty factor was just one of 13 factors the court listed for the jury to consider when evaluating the credibility and accuracy of Ryan's identification testimony.

Moreover, we must evaluate the entire charge to the jury, as the Supreme Court did in *Lemcke, supra*, 11 Cal.5th at page 658. Here, the jury was given instructions that erode Hernandez's claim of instructional error or a due process violation. The jury was instructed that Hernandez was presumed innocent and prosecution bore the burden of

13

proving all elements of the offenses beyond a reasonable doubt (CALCRIM No. 220; see *Lemcke, supra*, 11 Cal.5th at p. 658). CALCRIM No. 315 reiterated the prosecution's burden of proving beyond a reasonable doubt Hernandez was the one who committed the crimes and if the prosecution had failed to satisfy this burden, the jury must find him not guilty. (See *Lemcke, supra*, 11 Cal.5th at p. 658.) And the jury was instructed it "alone must judge the credibility or believability of the witnesses" and that "[p]eople sometimes honestly . . . make mistakes about what they remember." (CALCRIM No. 226; see *Lemcke, supra*, 11 Cal.5th at p. 658.)

Hernandez seeks to distinguish *Lemcke*, asserting the inclusion of the witness certainty factor in CALCRIM No. 315 violated his right to due process because the jury did not have the benefit of expert testimony explaining "that certainty of identification has no correlation with its reliability." We are not persuaded. Hernandez had an opportunity to present expert testimony but opted not to do so, and he does not assert his counsel's failure to call an expert constituted ineffective assistance. Although there was no expert testimony, Hernandez, nevertheless, seized his opportunity to present a mistaken identification defense. He presented evidence showing he and his cousin Mesta looked similar and were often mistaken for brothers. Hernandez also presented testimony Mesta was driving the car involved in the robbery on the day it occurred and that Mesta told his mother he was going to be in the city where the robbery occurred. And through cross-examination, Hernandez challenged Ryan's identification of him as the robber, eliciting testimony Ryan was focused on the gun rather than the robber's face.

Hernandez also contends *Lemcke* is distinguishable because "the certainty of [Ryan's] identification was stressed during his testimony and . . . the prosecutor's closing argument." However, Hernandez did not object to any of these questions or argument, thus forfeiting his contention of error. (*People v. Hill* (1998) 17 Cal.4th 800, 820.)

14

We conclude Hernandez, like the defendant in *Lemcke*, "failed to establish that the trial court's decision to include the certainty factor in CALCRIM No. 315 violated his due process rights or otherwise constituted error under the circumstances presented here." (*Lemcke, supra*, 11 Cal.5th at p. 669.)

D. *Prejudice*

Nevertheless, assuming there was error, we conclude it was not prejudicial because it was not reasonably probable Hernandez would have obtained a more favorable result had the trial court omitted the witness certainty factor. (*Sánchez, supra*, 63 Cal.4th at p. 463.) Indeed, Ryan's identification of Hernandez as the robber was the least damaging identification evidence presented at trial. Hernandez identified himself as the robber in the captions of his Instragram posts with photographs of the gun used in the robbery and Ryan's stolen property. Hernandez's explanation he was not involved in the robbery was unbelievable given his Twitter communication with C.L. concerning setting up a robbery for the day Ryan was robbed. Although Mesta's car was involved in the robbery, Hernandez admitted Mesta permitted him to drive the car and one of the Instragram photographs posted the day of the robbery showed Hernandez driving it. Moreover, the photograph of Hernandez and Mesta was admitted into evidence, thus permitting the jurors to review it and reach their own conclusions about similarities in the two men's appearance and the accuracy of Ryan's identification. We conclude the evidence of Hernandez's guilt was overwhelming. "Indeed, we would find giving the [witness certainty] instruction harmless beyond a reasonable doubt." (*Ibid.*)

15

DISPOSITION

The judgment is affirmed.


                              O'LEARY, P. J.

WE CONCUR:


MOORE, J.


THOMPSON, J.